UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ORIGINAL**

GIACOMO A. CIOCCA,

        Plaintiff,

-v-

No. 02 Civ. 5067 (LTS)(HBP)

GREGOR N. NEFF and WHITMAN, BREED,
ABBOTT & MORGAN, LLP,

        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/22/05

## MEMORANDUM OPINION AND ORDER

APPEARANCES:

| | |
|---|---|
| ALLEGAERT BERGER & VOGEL LLP<br>By: David Adam Berger, Esq.<br>    Ronald Busloff, Esq.<br>111 Broadway<br>18th Floor<br>New York, New York 10006<br>*Attorneys for Plaintiff* | HANDLER & GOODMAN LLP<br>By: Arthur M. Handler, Esq.<br>    Robert S. Goodman, Esq.<br>805 Third Avenue<br>8th Floor<br>New York, New York 10022<br>*Attorneys for Defendants* |

LAURA TAYLOR SWAIN, United States District Judge

Copies mailed     6-21-05
Chambers of Judge Swain

Before the Court are the motions of Defendants Gregor N. Neff ("Neff") and Whitman, Breed, Abbott & Morgan ("Whitman, Breed") (together, "Defendants") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Giacomo A. Ciocca ("Plaintiff" or "Ciocca") brings four causes of action: (1) legal malpractice; (2) breach of contract; (3) breach of fiduciary duty; and (4) promissory estoppel. The Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. § 1332(a). For the following reasons, Defendants' motion for summary judgment is granted in part and denied in part.

## BACKGROUND

The following facts are undisputed except where characterized as allegations or contentions. In the early 1990s, Ciocca was Chairman and CEO of Megatrend Telecommunications, Inc. ("Megatrend"), a telecommunications company. (Dep. of Giacomo A. Ciocca, Nov. 14, 2003 ("Ciocca Dep."), at 4.) In 1995, Megatrend filed for bankruptcy protection. (Aff. of Gregor Neff ¶ 13.) Megatrend had retained Neff (at the time a partner in the law firm of Curtis Morris & Safford) to prosecute a patent application. (Neff Aff. ¶ 11.) Megatrend was granted U.S. Patent No. 5,631,947 (the "Patent") in 1997, and the rights to the Patent were subsequently assigned to Ciocca in exchange for releasing his creditor claims against Megatrend in connection with the bankruptcy proceedings. (Decl. of Giacomo A. Ciocca ¶ 6.)

Upon receiving a letter from Daniel A. DeVito, Esq., of Weil, Gotshal, & Manges LLP, who represented a party interested in purchasing Ciocca's rights to the Patent, Plaintiff retained Neff (who was by then a partner at Whitman, Breed) to negotiate the sale. (Ciocca Dep. at 36-38, Nov. 14, 2003.) During discussions with Ciocca about the representation, Neff

informed Ciocca that Neff had never been fully paid for the patent prosecution, and that the outstanding debt was $60,000 ($42,000 in fees, $18,000 in interest). (Neff Aff. ¶ 29.) Ciocca and Neff agreed that the $60,000 would be paid from the proceeds of the Patent sale. (Defs.' Rule 56.1 Statement ¶ 39; Pl.'s Rule 56.1 Statement ¶ 39.)

Topp Telecom, Inc. purchased the Patent for $850,000 on June 29, 1999. (Neff Aff. ¶ 47.) Topp Telecom, Inc., which subsequently changed its name to TracFone Wireless, Inc. ("TracFone"), sued Ciocca for breach of contract with respect to assignment of the Patent in an action styled TracFone Wireless, Inc. v. Giacomo (a/k/a Jack) A. Ciocca, No. 02-CV-1252 (S.D.N.Y.). That action was dismissed pursuant to a stipulation of the parties (the "TracFone Contract Litigation").

Ciocca alleges in his Amended Complaint in this action that the Patent should have been appraised prior to the sale to TracFone. (Am. Compl. ¶ 18.) He contends that the Patent was undervalued at the time of sale. Ciocca further alleges that Neff, as his attorney, never suggested a valuation of the Patent, and that he would have agreed to have such a valuation performed. (Ciocca Decl. ¶ 11; Ciocca Dep. at 44, Nov. 14, 2003.) Neff contends that he suggested an "investigation of the market" to Ciocca, but that Ciocca never instructed him to pursue one. (Neff Aff. ¶¶ 20, 47; Dep. of Gregor Neff at 69.)

Plaintiff also alleges that Neff created a conflict of interest by agreeing to represent TracFone prior to the conclusion of his representation of Ciocca in the sale of the Patent. Neff avers that his work for Plaintiff ended with the closing of the Patent sale and that, when he properly informed Plaintiff of his subsequent representation of TracFone, Plaintiff had no objection. (Neff Aff. ¶¶ 49, 52.) Plaintiff asserts that Neff and Whitman, Breed failed

initially to disclose any understandings, agreements and/or discussions among Neff, Whitman, Breed and TracFone (Am. Compl. ¶14), and further alleges that Neff told him about representing TracFone prior to the execution of the Patent sale and that Ciocca never consented to the TracFone representation. (Ciocca Dep. at 30, July 18, 2002.)

## DISCUSSION

Summary Judgment Standard

Summary judgment shall be granted pursuant to Rule 56(c) of the Federal Rules of Civil Procedure where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden is on the moving party to show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Am. Home Assurance Co. v. Zim Jamaica, 296 F. Supp. 2d 494, 498 (S.D.N.Y. 2003). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. In deciding a motion for summary judgment, a court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Am. Cas. Co. of Reading, Pennsylvania v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994) (internal citation omitted).

Collateral Estoppel/Res Judicata

Defendants contend that they are entitled to summary judgment because the prior resolution of similar claims raised by Ciocca in the TracFone Contract Litigation precludes Ciocca from raising the claims he seeks to prosecute in this action. In that breach of contract litigation, Ciocca asserted, but later withdrew, counterclaims alleging that TracFone had retained Neff in the course of negotiation of the Patent sale transaction in order to undermine the negotiation process and obtain the Patent for a more favorable price. The parties later settled their respective claims and counterclaims, and the TracFone Litigation was dismissed with prejudice pursuant to a so-ordered stipulation. (TracFone Wireless, Inc. v. Giacomo (a/k/a/ Jack) A. Ciocca, No. 02-CV-1252 (S.D.N.Y.), Stipulation and Order of Dismissal, Dec. 12, 2002.)

Defendants assert that Plaintiff is precluded from litigating the claims he raised in the previous litigation with TracFone, which were withdrawn prior to disposition of the suit. As Plaintiff and Defendants use the terms "res judicata" and "collateral estoppel" interchangeably in addressing this issue, the Court will address each doctrine separately.

*Res Judicata*

Res judicata "applies to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same [claim, or] cause of action." Teltronics Servs., Inc. v. Hessen, 762 F.2d 185, 190 (2d Cir. 1985). Res judicata operates so that "'[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Saud v. Bank of New York, 929 F.2d 916, 918-19 (2d Cir. 1991) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398

(1981)). It applies "not only as to what was pleaded, but also as to what could have been pleaded." Teltronics Servs., Inc., 762 F.2d at 193.

Res judicata is clearly inapplicable here, as Defendant Neff was not a party to the prior litigation between TracFone and Ciocca, nor is he in privity with either of those parties.

*Collateral Estoppel*

In order for collateral estoppel to apply, "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 44 (2d Cir. 1986); see also Metromedia Co. v. Fugazy, 983 F.2d 350, 365 (2d Cir. 1992). "Generally speaking, when a particular fact is established not by judicial resolution but by stipulation of the parties, that fact has not been 'actually litigated' and thus is not a proper candidate for issue preclusion." Mishkin v. Peat, Marwick, Mitchell, No. 86 Civ. 4301, 1988 U.S. Dist. LEXIS 12449, at *6 (S.D.N.Y. Nov. 7, 1988); see also Lawlor v. National Screen Serv., 349 U.S. 322, 327 (1955) ("[j]udgment . . . unaccompanied by findings . . . [does] not bind the parties on any issue . . . which might arise in connection with another cause of action") (footnote omitted).

Ciocca's counterclaim regarding TracFone's retention of Neff was never litigated; rather, it was withdrawn and the action ultimately settled. Thus, there is no basis for the application of collateral estoppel to preclude Ciocca from asserting his claims in the instant case.

Legal Malpractice

Under New York law, to succeed on a claim of legal malpractice, a plaintiff must establish three elements: "(1) a duty, (2) a breach of the duty, and (3) proof that the actual damages were proximately caused by the breach of the duty." Ocean Ships, Inc. v. Stiles, 315 F.3d 111, 117 (2d Cir. 2002) (quoting Tinelli v. Redl, 199 F.3d 603, 606 (2d Cir. 1999) (internal citation omitted)). Defendants assert that they are entitled to summary judgment on the legal malpractice claim because (1) Neff did not breach any duty owed to Ciocca; (2) there is no credible conflict of interest claim; and (3) there is no showing that the alleged legal malpractice was the proximate cause of Plaintiff's alleged injuries.

Plaintiff's legal malpractice claim is premised on allgations that Neff: breached the standard of care and skill commonly exercised by an ordinary member of the legal community when, as an attorney who specializes in patent law, he failed to obtain an appraisal of the Patent; failed to advise Ciocca that the Patent should have been valued before Ciocca entered into the agreement with TracFone; and failed to disclose "the existence of an understanding, agreement and/or discussions between [Defendants] . . . and TracFone relating to their prospective and/or actual retention by or employment by TracFone. (Am. Compl. ¶ 18.)

"To survive summary judgment, the plaintiff in a malpractice case cannot rest on his 'allegations of what [he] views as deficiencies in defendant's conduct as his attorney,' but must offer 'evidence to establish the standard of professional care and skill that [defendant] allegedly failed to meet.'" Hatfield v. Herz, 109 F. Supp. 2d 174, 179 (S.D.N.Y. 2000) (citing Thaler & Thaler v. Gupta, 617 N.Y.S.2d 605, 606 (3d Dept. 1994)); see also Estate of Ginor v. Landsberg, 960 F. Supp. 661, 672 (S.D.N.Y. 1996), aff'd, 159 F.3d 1346 (2d Cir. 1998). "The

courts generally require malpractice plaintiffs to 'proffer expert opinion evidence on the duty of care to meet their burden of proof in opposition to a properly supported summary judgment motion.'" Hatfield, 109 F. Supp. 2d at 179 (quoting Estate of Nevelson v. Carro, Spanbock, Kaster & Cuiffo, 259 A.D.2d 282 (1st Dept. 1999) (internal citation omitted)).

In support of his valuation-related allegations, Plaintiff proffers the declaration of Robert Goldscheider, who represents that he has fifty years' experience as a lawyer or consultant in issues of intellectual property law and practice. (Goldscheider Decl. ¶ 3.) Goldscheider opines that the prevailing practice for attorneys representing a patent seller is to hire an expert to value a patent where the attorney is unable personally to perform the valuation. (Goldscheider Decl. ¶ 5.)

Defendants assert that they were retained only to negotiate the sale of the Patent to the then-unknown buyer represented by Mr. DeVito, that Neff carefully followed Ciocca's explicit instructions as to strategy for the sale and negotiating positions, that this course of action was reasonable, and, therefore, that Neff did not negligently breach a duty. There are thus genuine issues of material fact as to whether Neff failed to exercise the "degree of care, skill, and diligence expected of a member of the legal community," 675 Chelsea Corp. v. Lebensfeld, No. 95 Civ. 6239, 1997 U.S. Dist. LEXIS 14076, at *5 (S.D.N.Y. Sept. 17, 1997), or whether Neff's action was "a lawyer's choice of one course of action . . . among several reasonable alternatives [which] does not constitute malpractice." Ayala v. Fischman, No. 97 Civ. 6698, 2001 U.S. Dist. LEXIS 19761, at *12 (S.D.N.Y. Nov. 26, 2001).

Additionally, there are genuine issues of material fact with respect to any actual or potential conflict of interest arising from Neff's representation of TracFone for the foreign patent

rights, including whether that representation began before, during or after his representation of Ciocca in the sale of the Patent and whether there was appropriate disclosure. The parties' conflicting evidence relating to these issues frames triable issues of fact regarding whether Neff engaged in dual representation without disclosure and consent, and whether there was a substantial adverse interest between TracFone and Ciocca if, as Plaintiff alleges, Neff was representing TracFone and Ciocca either sequentially or simultaneously. See Kaufman & Kaufman v. Hoff, 213 A.D.2d 197, 198 (1st Dept. 1995); Greene v. Greene, 391 N.E.2d 1355, 1358 (N.Y. Ct. App. 1979) (citing Matter of Kelly, 244 N.E.2d 456, 461 (N.Y. Ct. App. 1968)). Defendants' motion for summary judgment on the claim of legal malpractice is, therefore, denied.

Breach of Contract/Breach of Fiduciary Duty

Plaintiff alleges that Defendants breached their contract with Ciocca by "failing to provide to Ciocca legal services customarily provided by competent attorneys and by attorneys specializing in the field of patent law." (Am. Compl. ¶ 29.) Plaintiff further alleges that Defendants breached their fiduciary duty to Ciocca by failing to advise Ciocca "of discussions, understandings or agreements between" Defendants and TracFone "relating to the actual or potential retention or employment of [Defendants] . . . by TracFone" and by failing to seek a waiver from Ciocca with respect to such discussions, understandings or agreements. (Am. Compl. ¶¶ 23, 24.) In his opposition papers on the instant motion, Ciocca further asserts that Defendants breached their fiduciary duty by demanding an interest in the Patent sale in the amount of $60,000, which Defendants aver represented unpaid fees and interest owed to Neff for

prosecuting the Patent application for Megatrend. (DR 56.1 ¶ 39; PR 56.1 ¶ 39.) Defendants argue that Plaintiff's claims of breach of contract and breach of fiduciary duty must be dismissed as a matter of law, as duplicative of Plaintiff's malpractice claim.

New York law holds that, where a breach of contract or breach of fiduciary duty claim is premised on the same facts and seeks relief identical to that sought in a legal malpractice cause of action, such claims are redundant and should be dismissed. InKine Pharm. Co. v. Coleman, 305 A.D.2d 151, 152 (1st Dept. 2003) (citing Sonnenschine v. Giacomo, 295 A.D.2d 287 (1st Dept. 2002)) ("The breach of contract and breach of fiduciary duty claims were properly dismissed as duplicative, since they arose from the same facts as the legal malpractice claim and allege similar damages."); Estate of Nevelson v. Carro, Spanbock, Kaster & Cuiffo, 290 A.D.2d 399, 400 (1st Dept. 1999). Here, the malpractice and breach of contract claims arise from the same facts and alleged legal obligations concerning Neff's representation of Ciocca in the sale of the Patent. Plaintiff's claim of breach of contract is redundant of the legal malpractice claim, and is therefore dismissed.

Plaintiff's claim for breach of fiduciary duty, however, is not entirely duplicative of the legal malpractice claim and thus survives the instant motion. Although the underlying factual assertions relating to disclosure of the alleged relationship between Defendants and TracFone are the same, the standard of proof applicable to the fiduciary duty claim is different from that pertinent to the malpractice claim. Furthermore, to the extent the fiduciary breach claim is premised on the demand for payment of $60,000 debt, the relevant facts are not entirely duplicative. Plaintiff alleges that Neff breached his fiduciary duty by requiring Ciocca to pay a debt owed to Neff by the bankrupt Megatrend. An attorney is "charged with a high degree of

undivided loyalty to his client." Kelly v. Greason, 296 N.Y.S.2d 937, 943 (1968). In order to "prevail on a claim of breach of fiduciary duty, plaintiffs must demonstrate a conflict of interest which amounted merely to a 'substantial factor' in their loss . . . ." Estate of Re v. Kornstein Veisz & Wexler, 958 F. Supp. 907, 924 (S.D.N.Y. 1997); see also Milbank, Tweed, Hadley & McCloy v. Boon, 13 F.3d 537, 543 (2d Cir. 1994). There are genuine issues of material fact as to whether Defendants created the impression that Megatrend's debt obligation to Neff, which was apparently discharged in Megatrend's bankruptcy proceeding, became Ciocca's debt obligation, and whether Neff's request for payment was a substantial factor in Ciocca's loss and therefore constituted a breach of fiduciary duty. Defendants' motion for summary judgment on the breach of fiduciary duty claim is, therefore, denied.

Promissory Estoppel

Plaintiff alleges that Defendants made promises to provide the reasonable and customary legal services provided by competent attorneys and attorneys specializing in patent law. Plaintiff avers that he relied on Defendants' promise, thereby creating a quasi-contract, the breach of which is remediable under a theory of promissory estoppel. Defendants argue that Plaintiff's claim for promissory estoppel must be dismissed as a matter of law.

Promissory estoppel sounds in contract theory. Restatement (Second) of Contracts § 90 (1981). In the instant case, the breach of contract claim has been dismissed because it is redundant of the legal malpractice claim. The promissory estoppel claim is likewise redundant and is therefore dismissed.

## CONCLUSION

Defendants' motion for summary judgment is granted as to Plaintiff's Third and Fourth Claims for Relief (breach of contract and promissory estoppel). Defendants' motion for summary judgment is, however, denied with respect to Plaintiff's First and Second Claims for Relief (legal malpractice and breach of fiduciary duty). The parties are directed to contact the Chambers of Magistrate Judge Henry B. Pitman promptly to schedule a settlement conference and address any outstanding pretrial matters.

SO ORDERED.

Dated: New York, New York
       June 20, 2005

/s/ LAURA TAYLOR SWAIN
United States District Judge